United States District Court
Southern District of Texas
**ENTERED**
April 02, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NICHOLLE BARCELO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-00017 |
| | § | |
| TEVA PHARMACEUTICALS U.S.A., | § | |
| INC., TEVA WOMEN'S HEALTH, INC., | § | |
| TEVA BRANDED PHARMACEUTICAL | § | |
| PRODUCTS R&D, INC., THE COOPER | § | |
| COMPANIES INC., and | § | |
| COOPERSURGICAL INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Nicholle Barcelo has sued CooperSurgical, Inc., and The Cooper Companies, Inc., among other defendants, for the injuries she sustained when part of her ParaGard intrauterine contraceptive device embedded in her uterus. CooperSurgical and The Cooper Companies have moved for judgment on the pleadings, arguing that they did not manufacture or sell the ParaGard device and that no other pleading allegations state a plausible claim for recovery.

Based on the pleadings, the parties' briefs, and the applicable law, the court grants the motion for judgment on the pleadings, with prejudice, finding that leave to amend would be futile. The reasons for this ruling are explained in detail below.

**I.  Background**

The ParaGard intrauterine device is a copper-wound, T-shaped contraceptive that is placed in the uterus to prevent pregnancy. (Docket Entry No. 1 at 20). Nicholle Barcelo had a ParaGard implanted in 2010. She had it removed in 2016. (*Id.* at 21). During its removal, part

of the ParaGard broke and became embedded in the lining of Barcelo's uterus. (*Id.* at 22). She later opted for surgery to remove the embedded part, but it was unsuccessful. (*Id.*). Barcelo's doctor advised her to leave the broken part in her uterus. (*Id.*).

Barcelo sued multiple defendants for her injuries, including CooperSurgical, Inc., The Cooper Companies, Inc., and Teva Women's Health, Inc. (*Id.* at 16). Teva Women's Health allegedly owned the assets of the company that manufactured and sold the ParaGard device when Barcelo was injured, but in November 2017, Teva entered into an asset purchase agreement with CooperSurgical. (Docket Entry No. 1 at 20; Docket Entry No. 62-2 at 6). The assets CooperSurgical purchased included the ParaGard device, but CooperSurgical and The Cooper Companies did not assume liability for injuries the device allegedly caused before the asset purchase agreement. (Docket Entry No. 62-2 at 60). CooperSurgical is a subsidiary company of The Cooper Companies. (Docket Entry No. 1 at 18).

Barcelo originally sued in Pennsylvania state court, asserting claims for manufacturing defect; design defect; failure to warn; negligence; common-law fraud based on the device's safety; negligent misrepresentation; negligent infliction of emotional distress; breach of express and implied warranties; violation of consumer-protection laws; and gross negligence. (*Id.* at 23–45). The defendants removed the case to federal court. (Docket Entry No. 1). The defendants then moved to transfer the case to this court, under 28 U.S.C. § 1404(a). (Docket Entry No. 21). After limited venue discovery, the Eastern District of Pennsylvania granted the motion. (Docket Entry No. 39). After transfer, CooperSurgical and The Cooper Companies moved for judgment on the pleadings, Barcelo responded, and the defendants replied. (Docket Entry Nos. 59, 60, 62, 64).

## II.     The Applicable Legal Standard

The Rule 12(b)(6) and Rule 12(c)[1] standards are the same. *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"To withstand a Rule 12(b)(6) motion, [a] complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). A "complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th

---

[1] "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation and citation omitted).

Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Id.* (quotation and alteration omitted).

The court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless to do so would be futile.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006); *Great Plains*, 313 F.3d at 329 ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  A court has discretion to deny a motion to amend for futility if the amended complaint would fail to state a plausible claim.  *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

**III.   Analysis**

CooperSurgical and The Cooper Companies argue that because they did not manufacture or sell the ParaGard device, they cannot be liable for Barcelo's injuries under Texas or Pennsylvania law.  *See New Tex. Auto Auction Servs. v. Gomez*, 249 S.W.3d 400, 405 n.29 (Tex. 2008) (quoting *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989)) ("A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury."); *Gilbert ex rel. Gilbert v. Advance Auto Parts*, 2018 WL 3521971, at *2 (Pa. Super. Ct. July 23, 2018) (quoting *Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 967 (Pa. Super. Ct. 1985)) ("Plaintiff bears the burden of identifying a defendant 'as a manufacturer or seller of a particular offending product, before . . . injuries may be found to be proximately caused by some negligence of [the defendant].'").  Barcelo agrees

that neither CooperSurgical nor The Cooper Companies manufactured or sold the ParaGard device that allegedly injured Barcelo; she argues that both defendants are liable under a successor-liability theory because CooperSurgical purchased the ParaGard assets from Teva in an alleged fraudulent transfer. (Docket Entry No. 62 at 1–2). Barcelo did not plead any factual basis for finding, or any legal claim for, successor liability or fraudulent transfer in her complaint.

Resolving this motion presents one question: can Barcelo amend her complaint to state a successor-liability or fraudulent-transfer claim against CooperSurgical and The Cooper Companies? Because Barcelo has not identified facts in her response that lead the court to believe she could amend to state a claim, the court finds the answer is no.

### A.     The Pleading Standard

Barcelo argues that either the Pennsylvania or Texas Rules of Civil Procedure should govern the pleading standard in resolving the defendants' motion, because Barcelo originally filed her case in Pennsylvania state court before it was removed to federal court and then transferred to this court. (Docket Entry No. 62 at 3–4). But this case is properly in federal court, and the Federal Rules of Civil Procedure govern the appropriate pleading standard. *See, e.g.*, FED. R. CIV. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3738 (Rev. 4th ed. 2019) ("[I]t has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters."). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The Fifth Circuit has not resolved whether Rule 9's heightened pleading standard, which requires that "a party

must state with particularity the circumstances constituting fraud," applies to fraudulent-transfer claims based on actual fraud. FED. R. CIV. P. 9(b); *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 118 (5th Cir. 2019) ("[W]e need not weigh in on this vexing question.").

Barcelo does not satisfy even Rule 8(a)'s requirement of a "short and plain statement of the claim." Barcelo has not pleaded any factual basis for, or cause of action for, successor-liability or fraudulent-transfer claims against CooperSurgical or The Cooper Companies, nor has she alleged facts in her complaint that would support those claims. The question that remains is whether Barcelo can amend her complaint to state either claim.

### B.  Successor Liability and Fraudulent Transfer

Barcelo argues that the Cooper defendants are liable under a successor-liability theory because in November 2017, CooperSurgical purchased assets from Teva that included its ParaGard device. Barcelo does not indicate how The Cooper Companies—CooperSurgical's parent company—would be liable under this theory, nor does she argue any factual or legal basis to pierce the corporate veil or proceed on an alter-ego basis.

The Texas Business Organizations Code provides that "[e]xcept as otherwise expressly provided by another statute, a person acquiring property described by this section may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person." TEX. BUS. CODE ANN. § 10.254(b) (West 2007). Texas courts and federal courts applying Texas law recognize the rule of nonliability for asset purchases, absent an express assumption of liability. *See Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 134–35 (Tex. App. 2000); *Thatcher v. Dargel Boats, Inc.*, No. 1:19-cv-10, 2019 WL 2601819, at *5 (S.D. Tex. Apr. 29, 2019).

6

Barcelo concedes, and the asset purchase agreement she attached to her brief confirms, that when CooperSurgical purchased the ParaGard assets from Teva Women's Health, Inc., it did not assume liability for injuries allegedly caused before the asset sale, including Barcelo's injury. (Docket Entry No. 62 at 6; Docket Entry No. 62-2 at 60).  Instead, Barcelo argues that an exception to the Texas successor-liability rule applies under the Uniform Fraudulent Transfer Act.

Courts have generally not interpreted the Texas successor-liability statute as creating an exception for fraudulent transfers.  *See Thatcher*, 2019 WL 2601819 at *5 ("Texas courts and federal courts applying Texas law have interpreted Section 10.254(b) and its predecessor as eliminating successor liability under the . . . 'fraudulent transfer' theory."); *In re 1701 Commerce, LLC*, 511 B.R. 812, 824 (Bankr. N.D. Tex. 2014) ("This court, like other courts, has been unable to locate a Texas statute providing that a fraudulent transfer creates successor liability.").  The Uniform Fraudulent Transfer Act, TEX. BUS. & COM. CODE §§ 24.001–.013, however, provides an independent remedy for creditors defrauded by a debtor's fraudulent transfer, regardless of successor liability.  The Uniform Fraudulent Transfer Act provides that:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor.

TEX. BUS. & COM. CODE § 24.005.

The Act lists nonexclusive factors to consider in determining actual intent under § 24.005(a), including whether:

> (1) the transfer or obligation was to an insider;

7

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

TEX. BUS. & COM. CODE § 24.005(b). "Not all, or even a majority, of the 'badges of fraud' must exist to find actual fraud. Indeed, '[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.'" *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008) (quoting *Roland v. United States*, 838 F.2d 1400, 1402–03 (5th Cir. 1988)).

To support her fraudulent-transfer theory, Barcelo argues that: the Cooper defendants "were aware of the pending litigation against Teva Women's Health, Inc., at the time of the asset purchase"; Teva Women's Health sold the ParaGard assets to CooperSurgical[2] "to escape

---

[2] Barcelo refers to both CooperSurgical and The Cooper Companies as having purchased the ParaGard assets, but later states that CooperSurgical purchased the assets. (*See* Docket Entry No. 62 at 6,

liability"; Teva Women's Health then converted into a limited liability company and sold its remaining assets "to create the illusion that Teva Women's Health, Inc., 'ceased to exist'"; and Teva "concealed its conversion" in "a direct attempt to thwart potential claimants from pursuing legal action." (Docket Entry No. 62 at 5). Barcelo attaches exhibits to her response brief that include CooperSurgical's asset purchase agreement and Teva's certificate of conversion from a corporation into a limited liability company. (Docket Entry Nos. 62-2, 62-3). While these documents are not referred to in, or attached to, Barcelo's complaint, and are not properly considered at the pleadings stage, they inform the court as to what allegations Barcelo could include in an amended complaint.

Barcelo's fraudulent-transfer theory relies on Teva's conversion from a corporation into a limited liability company. Barcelo argues that because the Cooper defendants knew of pending litigation against Teva for claims similar to Barcelo's, and because Teva converted into an LLC just before the asset sale, the defendants must have been trying to conceal Teva's existence and defraud claimants like Barcelo. (Docket Entry No. 62 at 6–7). Barcelo points to two facts, not alleged in her complaint, in support: first, that Teva's general counsel stated that Teva Women's Health, Inc., "ceased to exist"; and second, that Teva filed for conversion only in Delaware, which does not provide corporate documents online. (*Id.*). Barcelo argues that Teva's statement that the incorporated entity ceased to exist, combined with the fact that Barcelo's counsel had to call the Delaware Secretary of State office to learn that Teva converted, shows an actual intent to defraud. (*Id.*).

---

9). The asset purchase agreement that Barcelo attached to her response brief confirms that CooperSurgical, Inc., purchased the assets. (Docket Entry No. 62-2 at 6).

9

The Cooper defendants respond that Teva Women's Health was incorporated in Delaware, so it was lawfully required to file for conversion in Delaware. The certificate document was publicly filed with Delaware's Secretary of State. (Docket Entry No. 64 at 8). The Cooper defendants cite cases that confirm that while the resulting LLC is deemed to be the same entity as the converted corporation, the incorporated entity ceases to exist under Delaware law. (Docket Entry No. 64 at 8–9). *See In re: Syngenta AG Mir 162 Corn Litig.*, No. 2:16-cv-02582, 2016 WL 5481997, at *2 (D. Kan. Sept. 29, 2016) ("[I]n the event of a conversion from corporation to LLC, the LLC is deemed to be the same entity as the corporation. Only one entity remains after the conversion . . . in essence, the corporation does cease to exist."). Barcelo concedes that Teva's general counsel clarified during a Rule 30(b)(6) deposition that "Teva Women's Health, Inc., was converted 'out of existence.'" (Docket Entry No. 62 at 7).

Barcelo fails to identify facts that, if pleaded, could state a plausible claim that the Cooper defendants and Teva fraudulently transferred the ParaGard assets to avoid liability. Only one factor is present: that the defendants allegedly knew of pending litigation against Teva before the asset sale. Nothing indicates that Teva sold the ParaGard assets for inadequate consideration, that the transfer was concealed, that Teva transferred substantially all its assets to CooperSurgical, or that Teva remained in control of the ParaGard assets after the sale. Teva Women's Health, Inc., as a Delaware corporation, was required to file its conversion certificate in Delaware. The fact that Delaware does not make corporate filings available online does not suggest a cover-up; Teva publicly filed the document, which Barcelo later acquired by calling the Secretary of State's office. Teva's general counsel's statements that the incorporated entity "ceased to exist" were factually and legally accurate. That Teva sold its ParaGard assets to CooperSurgical, when both companies allegedly knew of pending litigation, and that

10

CooperSurgical purchased the assets without assuming liability for injuries caused before the sale, does not plausibly allege that CooperSurgical purchased the assets intending to defraud creditors such as Barcelo.

Barcelo has not shown a sufficient basis in her response for the court to conclude that amendment would be anything but futile. Without this basis, her request for limited discovery is denied. Her complaint does not plead, or even mention, successor liability or fraudulent transfer, and she concedes that neither CooperSurgical nor The Cooper Companies manufactured or sold the ParaGard device that allegedly injured her. Barcelo's claims against CooperSurgical and The Cooper Companies are dismissed, with prejudice.

## IV.  Conclusion

The defendants' motion for judgment on the pleadings, (Docket Entry No. 59), is granted. Barcelo's claims against CooperSurgical, Inc., and The Cooper Companies, Inc., are dismissed, with prejudice.

SIGNED on April 2, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge